UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

JENNIFER L. KINDER and
DAVID J. KINDER,

       Plaintiffs,

vs.

RHODE ISLAND FAST FERRY, INC.

       Defendant.
_____

C.A. No.: _____

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW Plaintiffs Jennifer L. Kinder and her husband David J. Kinder by and through their undersigned legal counsel and file this Complaint against Defendant Rhode Island Fast Ferry, Inc. alleging upon information and belief as follows:

## INTRODUCTION

1. Jen works at CVS Health in Woonsocket, RI.[1] She and a friend planned a weekend trip to Martha's Vineyard in August 2023. To get there, they bought tickets for passage aboard Defendant's ferry departing from Quonset Point, RI.

2. Jen and her friend boarded the ferry. In an area at or near the mouth of Narragansett Bay, the ferry was crashing through the seas. The ferry was slamming up and down like a hobbyhorse. It never slowed. It didn't change course. It ignored the difficulties passengers were having with the ferry's movement. Although a passenger

---

[1] This lawsuit is about a person. She had hopes and expectations for her life that were changed by the injuries she suffered as a passenger aboard a commercial vessel. In this way, the undersigned law firm refers to her by her given name, Jen. This use of Plaintiff's given name is not done casually or with disregard for the seriousness of these proceedings. It's meant to highlight this lawsuit is about a person.

1

airplane changes its speed and/or altitude when it hits turbulence, this ferry just kept crashing into the seas.

3. At some point at or near the mouth of Narragansett Bay and while Jen was trying to maneuver toward the back of the ferry so she might vomit, she encountered a space with missing handholds and as the ferry lifted and dropped away, she impacted heavily on the deck. She fell down. She could see a bone pushing up against the skin of her right ankle. She was in awful pain lying on the deck.

4. Jen didn't do anything wrong. The facts at trial will show this was an avoidable incident and an incident where speed and an indifference to the duty of reasonable care owed passengers like Jen resulted in a grievous injury.

5. As a result of her injuries, Jen has had surgery, metal screws and plates installed inside her foot and months of physical therapy and rehabilitation. Jen's active life has been upended and interrupted with doctor's visits, prescriptions, persistent pain and an uncertain recovery peppered with the possibility of additional surgeries, arthritic changes and medical care long into the future. Image # 1 shows two images of Jen's right ankle showing the surgically installed plates and screws.



Image # 1

6. This injury didn't have to happen. This lawsuit is about asking a jury for the full value of what this ferry company took from Jen.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction of this action under Title 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different states such that there is complete diversity.

8. Venue is appropriate in the District of Rhode Island pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

9. At all times material hereto, Plaintiffs Jennifer L. Kinder and David J. Kinder were and are residents of the County of Bristol, State of Massachusetts such that they are Massachusetts citizens.

10. At all times material hereto, Rhode Island Fast Ferry, Inc. ("Company") is a domestic business corporation incorporated under the laws of and maintaining its principal place of business in the State of Rhode Island such that it is a citizen of Rhode Island.

11. At all times material hereto, the Company was and is engaged in the business of carrying passengers for hire.

12. At all times material hereto, the Company was a common carrier.

13. On August 25, 2023, the Company was engaged in the business of carrying passengers from a point of embarkation and disembarkation located in the State of Rhode Island.

14. The motor vessel JULIA LEIGH is an approximately one-hundred-foot (100') vessel certified to carry passengers (hereinafter "Vessel").

15. The Vessel is powered by twin MTU diesel engines each delivering 1,875 horsepower for a total of 3,750 horsepower.

16. Image # 2 depicts the Vessel as it would have generally appeared on August 25, 2023.



Image # 2

17. On August 25, 2023, the Company owned the Vessel.

18. On August 25, 2023, the Company operated the Vessel.

19. On August 25, 2023, the Company crewed the Vessel.

20. On August 25, 2023, the Vessel's Captain was employed by the Company.

21. The Company hired and paid the Captain and crew that were aboard the Vessel on August 25, 2023 at the time Jen was injured.

22. On August 25, 2023, the person driving the Vessel at the time of Jen's injury was employed by the Company.

23. At all times material hereto including on August 25, 2023, the Company was and is responsible for owning, chartering, operating, navigating, managing, crewing, equipping, maintaining and otherwise controlling the Vessel.

24. At all times material hereto including on August 25, 2023, the Company was and is vicariously responsible for the actions and inactions of its employees and agents including the Captain and crew of the Vessel.

25. The Vessel was not under charter on August 25, 2023.

26. On or before August 25, 2023, the Company collected hire (meaning the passenger ticket price) from Jen.

27. At all times material hereto, the Vessel was engaged in the carriage of passengers for hire.

28. Attached as Exhibit "A" is a true, accurate and complete copy of the Vessel's Certificate of Documentation.

29. In 2021 while owned by the Company, the U.S. Coast Guard noted a deficiency aboard the Vessel in that it did not have all the necessary charts for its area of operation.

30. In July 2021 while owned by the Company, the U.S. Coast Guard noted a deficiency aboard the Vessel in that the first-aid kit aboard the Vessel was not approved by the U.S. Coast Guard.

31. In July 2021 while owned by the Company, the U.S. Coast Guard noted various deficiencies with the Vessel related to Safety of Navigation.

32. In July 2022 while owned by the Company, the Vessel ran aground and became stranded in a way the U.S. Coast Guard described as an "unintended grounding."

## STATEMENT OF FACTS

33. On August 25, 2023, Jen was a passenger (ticketed invitee) lawfully aboard the Vessel.

34. On August 25, 2023, Jen was a paying passenger aboard the Vessel.

35. The Vessel's voyage on August 25, 2023 during which Jen was injured was a passage between a port located in Quonset Point, Rhode Island and a port located in Martha's Vineyard, Massachusetts ("Voyage").

36. At all times material hereto, the Vessel was located on navigable waters.

37. On August 25, 2023, at a location believed to be at or near the mouth of Narragansett Bay, the sea conditions became very poor.

38. On August 25, 2023, at a location believed to be at or near the mouth of Narragansett Bay, the Vessel slammed and punched into seas creating a hazardous situation and resulting in significant passenger jarring and discomfort.

39. On August 25, 2023, at a location believed to be at or near the mouth of Narragansett Bay, passengers were seen exhibiting signs of physical discomfort, sea-sickness and nausea while other passengers were vomiting.

40. On August 25, 2023, although encountering a change in the sea conditions at a location believed to be at or near the mouth of Narragansett Bay, the Vessel did not reduce its speed or change course.

41. With the worsened sea conditions, passengers were in discomfort, nauseous and vomiting.

42. On August 25, 2023, with the worsened sea conditions, Jen was ill and got up from her seat to move to the back of the Vessel expecting she would vomit.

43. As she moved from her seat toward the back of the Vessel, Jen encountered a section where the passenger seats with their handholds were missing.

44. Image # 3 depicts the general vicinity aboard the Vessel of Jen's injury and shows the location where the passenger seats were missing.



Image # 3

45. As she moved from her seat toward the back of the Vessel and encountered the missing seat back handholds, the Vessel dropped suddenly away from her feet such that as her right leg came down, it impacted violently with the Vessel's deck.

46. Jen lay on the deck in extreme pain and unable to move.

47. Thereafter, a fellow passenger helped her into a seating position.

7

48. On examining her ankle, Jen saw a bone pressing against the skin.

49. The injury Jen suffered required professional medical treatment beyond first-aid.

50. The injury Jen suffered was a serious marine incident as that phrase is defined by 46 C.F.R. § 4.03-2.

51. On information and belief, the Company failed or refused to return (or deviate) from the Voyage to disembark Jen at a nearby port so that she might receive immediate medical treatment.

52. Neither the Captain nor the crew offered Jen the option to return (or deviate) from the Voyage to disembark at a nearby port so that she might receive immediate medical treatment.

53. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, the Company did not report the occurrence of Jen's injury during the Voyage to the U.S. Coast Guard.

54. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, neither the Captain nor the crew reported the occurrence of Jen's injury during the Voyage to the U.S. Coast Guard.

55. For the remainder of the Voyage, Jen remained in excruciating pain seated on an outside passenger seat, exposed to the weather with her right leg extended and placed on a wheelchair.

56. Upon arriving in Martha's Vineyard, Jen was removed from the Vessel by ambulance personnel and taken to Martha's Vineyard Hospital for treatment.

57. Thereafter, Jen underwent surgery at Massachusetts General Hospital.

58. Jen is continuing to treat medically for her injuries and she remains limited in her activities, suffers pain and is undergoing physical therapy.

59. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, the Company did not and has not delivered, e-mailed or filed a form CG-2692 (titled <u>Report of Marine Casualty, Commercial Diving Casualty, or OCS-Related Casualty</u>) pertaining to Jen's injuries.

60. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, neither the Vessel's Captain nor any of its crew delivered, e-mailed or filed a form CG-2692 (titled <u>Report of Marine Casualty, Commercial Diving Casualty, or OCS-Related Casualty</u>) pertaining to Jen's injuries.

61. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, the Company did not and has not delivered, e-mailed or filed a form CG-2692B (titled <u>Report of Mandatory Chemical Testing Following A Serious Marine Incident Involving Vessels in Commercial Service</u>) pertaining to Jen's injuries.

62. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, neither the Vessel's Captain nor any of its crew delivered, e-mailed or filed a form CG-2692B (titled <u>Report of Mandatory Chemical Testing Following A Serious Marine Incident Involving Vessels in Commercial Service</u>) pertaining to Jen's injuries.

63. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, the Company did not and has not delivered, e-mailed or filed a form CG-2692C (titled <u>Personnel Casualty Addendum</u>) pertaining to Jen's

injuries.

64. On information and belief based on a review of the U.S. Coast Guard Maritime Information Exchange, neither the Vessel's Captain nor any of its crew delivered e-mailed or filed a form CG-2692C (titled <u>Personnel Casualty Addendum</u>) pertaining to Jen's injuries.

65. Upon information and belief, neither the Company nor the Vessel's Captain or crew obtained the names or contact details of witnesses to Jen's injuries.

66. Jen's serious injuries are permanent or continuing in nature and she will suffer losses and impairments in the future all of which amount to damages in excess of $1,000,000.00.

67. At all times material hereto, Jen exercised due care and caution.

68. Jen has fulfilled all condition precedents to the filing of this lawsuit, if any, or they are waived.

## **COUNT ONE**

(*Breach of Duty of Reasonable Care*)

69. Plaintiffs reallege and reincorporate all the preceding paragraphs herein.

70. At all times material hereto, the Company owed Jen a duty of reasonable care under the circumstances.

71. The Company owed a duty to Jen to use reasonable care in operating its Vessel in a safe, prudent and seamanlike manner.  This duty existed as a matter of law and was implied in Jen's contract of carriage with the Company.

72. The Company also owed a duty to Jen to maintain the Vessel's walkways, passageways and handholds in a safe condition.  This duty existed as a

matter of law and was implied in Jen's contract of carriage with the Company.

73. The Company had a duty to operate the Vessel in a reasonable and prudent manner; having due regard for all applicable maritime rules and regulations; and all other attendant circumstances so as not to endanger the life, limb, or property of any person including its passenger, Jen. This duty included the duty to operate the Vessel in a reasonably safe manner consistent with the weather and sea conditions.

74. Reasonable care includes a captain's "duty to monitor and take into account weather conditions." DiMillo v. Sheepscot Pilots, Inc., 870 F.2d 746, 748 (1st Cir. 1989).

75. The Code of Federal Regulations (46 C.F.R. § 185.304) imposes a duty on a vessel's captain and states in pertinent part:

> . . . [t]he master shall operate the vessel keeping the safety of the passengers and crew foremost in mind by directing the vessel in order to prevent a casualty. Special attention should be paid to: Prevailing and forecasted visibility and environmental conditions, including wind and waves [as well as the] . . . . Vessel's handling characteristics.

76. On August 25, 2023, the Company breached its duty to provide Jen with reasonable or ordinary care under the circumstances by reason of it:

    a. Operating the Vessel at an excessive rate of speed for the then existing conditions;

    b. Voluntarily encountering sea conditions that presented an unreasonable safety hazard to the passengers;

    c. Voluntarily encountering sea conditions in a manner that presented a safety hazard to the passengers;

    d. Failing to approach the sea conditions in a proper direction;

    e. Failing to reduce Vessel's speed for the then existing sea conditions;

    f.      Violating one or more Rules of the Road pertaining to the Vessel's navigation;

    g.      Failing to warn <u>or</u> inadequately warning the Vessel's passengers including Jen;

    h.      Failing to keep a proper lookout;

    i.      Failing to operate and maintain a seaworthy vessel with proper equipment and properly trained competent crew and

    j.      Acting and failing to act in other negligent ways and/or maintaining such unseaworthy conditions as may be revealed during discovery and proven at trial.

77.    The Company's breach of its duty of reasonable care is an actual and proximate or legal cause of Jen's injuries which include, but are not limited to:

    a.      Right trimalleolar ankle fracture meaning there are three bone fractures threatening the entire ankle joint consisting of a fracture of the lateral malleolus, a fracture of the medial malleolus and a fracture of the posterior malleolus;

    b.      Damage to the right ankle joint and damaged ligaments including lateral ligament instability;

    c.      Talus avulsion fracture and

    d.      Such other diagnoses as are shown in Jen's medical records and as may develop.

78.    The Company was negligent, grossly negligent and/or reckless in breaching its duty of reasonable care.

79.    The Company either created the dangerous conditions complained of herein and/or knew of the conditions causing Jen's injuries and did not correct them, or the dangerous conditions existed for a sufficient length of time so that the Company in the exercise of reasonable care under the circumstances should have observed them and corrected them.

80. Alternatively or in addition, the Company created the dangerous conditions aboard its Vessel.

81. The Company was in privity and knowledge of its own negligence and of the unseaworthy conditions aboard the Vessel prior to and during the Voyage.

82. At all times material, Jen was acting with due care for her own safety.

83. As a direct and proximate result of the Company's negligence, gross negligence, recklessness and/or the unseaworthiness of its Vessel, all with its privity or knowledge: Jen was injured about her body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress and other mental and/or nervous disorders; suffered aggravation of any previously existing conditions therefrom; incurred medical expenses in the care and treatment of her injuries and suffered physical handicap.  Jen has further suffered a loss of income and/or will suffer a loss of earning capacity.  The injuries and losses are permanent or continuing in nature and/or Jen will suffer these injuries and losses into the future.

WHEREFORE, Plaintiff Jennifer L. Kinder demands judgment for all damages recoverable under the law against Rhode Island Fast Ferry, Inc. in an amount in excess of $1,000,000.00, plus interest (prejudgment and post-judgment), costs and attorneys' fees (as may be allowed by applicable law) and for such other, further or different relief as this Court deems just and equitable.

## **COUNT TWO**

(*Negligent Operation per R.I. Gen. Laws § 46-22-15*)

84. Plaintiffs reallege and reincorporate all the preceding paragraphs herein.

85. The Company had a duty to operate the Vessel in a reasonable and prudent manner; having due regard for all applicable maritime rules and regulations; and all other attendant circumstances so as not to endanger the life, limb, or property of any person including its passenger, Jen. This duty included the duty to operate the Vessel in a reasonably safe manner consistent with the weather and sea conditions.

86. On August 25, 2023, the Company breached its duty to operate the Vessel in a reasonable and prudent manner which caused Jen's injuries and damages.

87. R.I. Gen Laws § 46-22-15 states in pertinent part:

> The owner of a vessel shall be liable for any injury or damage occasioned by the negligent operation of the vessel, whether the negligence consists of a violation of the provisions of the statutes of this state, or neglecting to observe such ordinary care and such operation as the rules of the common law require.

88. Pursuant to R.I. Gen. Laws § 46-22-15 the Company is liable for Jen's injuries by reason of its negligent operation of the Vessel.

89. The Company's negligent operation of the Vessel is an actual and proximate or legal cause of Jen's injuries.

90. The Company was in privity and knowledge of its own negligence and of the unseaworthy conditions aboard the Vessel prior to and during the Voyage.

91. At all times material, Jen was acting with due care for her own safety.

92. As a direct and proximate result of the Company's negligent operation of the Vessel, all with its privity or knowledge: Jen was injured about her body and

extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress and other mental and/or nervous disorders; suffered aggravation of any previously existing conditions therefrom; incurred medical expenses in the care and treatment of her injuries and suffered physical handicap.  Jen has further suffered a loss of income and/or will suffer a loss of earning capacity.  The injuries and losses are permanent and/or continuing in nature and Jen will suffer these injuries and losses into the future.

WHEREFORE, Plaintiff Jennifer L. Kinder demands judgment for all damages recoverable under the law against Rhode Island Fast Ferry, Inc. in an amount in excess of $1,000,000.00, plus interest (prejudgment and post-judgment), costs and attorneys' fees (as may be allowed by applicable law) and for such other, further or different relief as this Court deems just and equitable.

## COUNT THREE

(*Failure to Properly Hire, Train, Supervise and/or Retain*)

93. Plaintiffs reallege and reincorporate all of the preceding paragraphs herein.

94. At all times material hereto, on information and belief, the Vessel was controlled, navigated and operated by employees and/or agents hired and employed by the Company.

95. Upon information and belief, the Company hired, trained, supervised, and/or retained the employees and/or agents that controlled, navigated and operated the Vessel on August 25, 2023.

96. The Company had a duty to hire qualified and competent employees and/or agents.

97. The Company also had a duty to properly train and/or properly supervise its employees and/or agents, and to use due care in the retention of its employees and/or agents.

98. Upon information and belief, the Company breached its duty by hiring unqualified or incompetent employees and/or agents; by improperly training its employees and/or agents; by improperly supervising its employees and/or agents; and/or by not being careful in the retention of its employees and/or agents.

99. Upon information and belief, the Company breached its duty of care by having inadequate hiring policies and procedures that allowed it to hire employees and/or agents, who upon information and belief, were unfit and/or incompetent for their job duties; by failing to train or by having inadequate training policies and procedures; by failing to train its employees and/or agents not to operate the Vessel at speeds excessive for the weather and sea conditions; by failing to train its employees and/or agents on how to respond to a serious marine injury; by having inadequate supervision policies and procedures and by failing to supervise its employees and/or agents which allowed for operation of the Vessel at a speed and in a way that was dangerous to its passengers and which caused serious injuries to Jen and/or in other such ways as will be shown at trial.

100. The Company was negligent, grossly negligent and/or reckless in breaching its duties to properly hire, train, supervise and/or retain its employees and/or agents.

101. The Company's negligent, grossly negligent and/or reckless hiring, training, supervision, and/or retention of its employees and/or agents is an actual and proximate or legal cause of Jen's injuries.

102. As a direct and proximate result of the Company's negligence, gross negligence and/or recklessness in hiring, training, supervising and/or retaining its employees and/or agents: Jen was injured about her body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress and other mental and/or nervous disorders; suffered aggravation of any previously existing conditions therefrom; incurred medical expenses in the care and treatment of her injuries and suffered physical handicap. Jen has further suffered a loss of income and/or will suffer a loss of earning capacity. The injuries and losses are permanent and/or continuing in nature and Jen will suffer these injuries and losses into the future.

WHEREFORE, Plaintiff Jennifer L. Kinder demands judgment for all damages recoverable under the law against Rhode Island Fast Ferry, Inc. in an amount in excess of $1,000,000.00, plus interest (prejudgment and post-judgment), costs and attorneys' fees (as may be allowed by applicable law) and for such other, further or different relief as this Court deems just and equitable.

## COUNT FOUR

(Loss of Consortium)

103. Plaintiffs reallege and reincorporate all of the preceding paragraphs herein

104. At all times material hereto, David J. Kinder was and is Jen's lawful husband.

105. By reason of the Company's fault as pleaded herein, and as direct and proximate result thereof, David has been deprived of and has suffered the loss of services, companionship, society, and consortium of his spouse, Jennifer L. Kinder, damaging him in an amount to be shown at trial but which is in excess of $100,000.00.

106. Such actions and/or omissions on the part of the Company, by and through its employees and/or agents were negligent, grossly negligent and/or reckless and were the proximate cause of David's injuries and damages.

WHEREFORE, Plaintiff David J. Kinder demands judgment for all damages recoverable under the law against Rhode Island Fast Ferry, Inc. in an amount in excess of $100,000.00, plus interest (prejudgment and post-judgment), costs and attorneys' fees (as may be allowed by applicable law) and for such other, further or different relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiff Jennifer L. Kinder demands judgment for all damages recoverable under the law against Defendant Rhode Island Fast Ferry, Inc. in an amount in excess of $1,000,000.00, plus interest, costs and attorneys' fees (as may be allowed by applicable law) and for such other, further or different relief as this Court deems just and equitable. And Plaintiff David J. Kinder demands judgment for all damages recoverable under the law against Defendant Rhode Island Fast Ferry, Inc. in an amount in excess of $100,000.00, plus interest, costs and attorneys' fees (as may be allowed by applicable law) and for such other, further or different relief as this Court deems just and equitable.

Dated: November 13, 2023
Newport, Rhode Island

        Fulweiler llc

     By: /s/ John K. Fulweiler

        John K. Fulweiler, Esq. (RI-7876)
        W.B. Franklin Bakery Building
        40 Mary Street
        Newport, RI 02840
        (401) 667-0977 -- Telephone
        (401) 646-2501 – Facsimile
        john@saltwaterlaw.com
        www.saltwaterlaw.com
        *Attorneys for Plaintiffs*

